NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| KANE BUILDERS, INC., | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 04-cv-3315 (DMC) |
| | : | |
| SOUTHERN NEW JERSEY BUILDING | : | |
| LABORERS DISTRICT COUNCIL, | : | |
| LIUNA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions by Plaintiff Kane Builders, Inc. ("Kane Builders") to vacate the arbitration opinion and award and to preclude expert report and testimony and also upon motions by Defendant Southern New Jersey Building Laborers District Council, LIUNA ("LIUNA") to confirm the arbitration award and for partial summary judgment on damages. Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Kane Builders' motion to vacate the arbitration opinion and award is **denied**; Plaintiff's motion to preclude expert report and testimony is **denied**; Defendant's motion to confirm the arbitration award is **granted** and Defendant's motion for partial summary judgment is **granted**.

## I.      BACKGROUND

On March 5, 2005, this Court consolidated two actions:  Kane Builders Inc. v. Southern New Jersey Building Laborers' District Council, LIUNA, AFL-CIO (04-3315) ("Kane I") and New Jersey

Building Laborers Statewide Benefits Funds, The Trustees of the New Jersey Building Laborers Statewide Benefits Funds v. Kane Builders, Inc., (05-1137) ("Kane II").

**A.    *Kane I***

Plaintiff is a non-union construction company with its principal place of business in Pennsylvania.  (Compl. at ¶1.)  Stephen Kane ("Kane") is the sole owner and officer of Kane Builders.  (Compl. at ¶7.)  Defendant is an un-incorporated labor union with its principal place of business in New Jersey.  (Compl. at ¶2.)  Plaintiff had no dealings with Defendant prior to June 2000. (Compl. at ¶11.)  In June 2000, Plaintiff was working on a construction project in Jersey City, New Jersey. (Compl. at ¶11.)   At some point during the month, Louis Mosca ("Mosca"), a representative for Defendant, approached Plaintiff's on-site supervisor, Mark Spencer ("Spencer"), to discuss employing union members on the job site.  Spencer informed Mosca he had no authority to hire any employees and advised Mosca to contact Kane.  Mosca then spoke with Kane and told him that Defendant could supply skilled laborers if Plaintiff signed on to the collective bargaining agreement ("CBA").  Kane told Mosca he would check with the client about hiring union members and call back.  Kane telephoned Mosca within an hour and agreed to hire two union members.  The dispute arises over what was said during the ensuing conversation between Kane and Mosca.  Both parties agree that no matter what transpired, Mosca returned to the site the following day with one union member, who was assigned work on the project.  Mosca never returned to the Jersey City site, nor did he again contact Spencer or any other employee of Plaintiff.

In May 2004, Plaintiff commenced work on a construction project in Ocean Township, New Jersey ("Ocean Township project").  (Compl. at ¶32.)  At some point during the month, another representative for Defendant notified Plaintiff that it was required to hire union members for the

project based on the CBA between the parties.  (Compl. at ¶34.)  Plaintiff refused and denied that it had entered into an agreement with Defendant.  (Compl. at ¶34.)  Defendant faxed Plaintiff a copy of the document signed by Spencer in June 2000.  (Compl. at ¶35.)  Plaintiff disputed the validity of any agreement on the basis that Spencer had no authority to enter into an agreement, among other reasons.  (Compl. at ¶36.)  Plaintiff refused to hire union members for the Ocean Township project.  (Compl. at ¶36.)  Defendant's attorneys filed a demand for arbitration with the New Jersey State Board of Mediation on May 21, 2004, alleging that a dispute had arisen between the parties in connection with the CBA.  (Compl. at ¶37.)

Plaintiff initially sought a preliminary injunction to enjoin the arbitration proceedings that LIUNA had commenced against Plaintiff.  After holding an evidentiary hearing on this issue, the Court issued a letter-opinion on December 6, 2004, (1) denying Plaintiff's application for a preliminary injunction; (2) finding that there are no grounds to bar enforcement of the CBA; (3) finding that Plaintiff is a signatory to the CBA; and (4) ordering that Plaintiff submit to arbitration of its dispute with Defendant.  These conclusions were largely based on the Court's finding that Defendant's version of the conversation between Kane and Mosca was more credible and that Kane informed Mosca that he would give Spencer authority to sign the CBA.  Plaintiff appealed this Court's ruling on January 3, 2006.  The parties agreed to hold the arbitration in abeyance pending the appeal.  However, on January 8, 2006, Kane filed a motion to voluntarily dismiss the appeal.  Kane claims that it withdrew its appeal in order to "obtain[] a prompt jury trial."  (Pl. Br. in Support of Motion to Stay Arbitration at 3, n.1.)

After Plaintiff withdrew its appeal, an arbitration was held at the New Jersey State Board of Mediation by Arbitrator Murray on January 12, 2007.  The Local Union appeared; however, Plaintiff

did not attend the arbitration.  At the arbitration, Arbitrator Murray reviewed the evidence and upheld the grievance of the Local Union, specifically finding that Plaintiff violated the terms of a valid and enforceable CBA.  (Certification of Vincent M. Giblin ("Giblin Cert."), Ex. E.)  The arbitrator then entered an award in the amount of $53,558.00 for the lost work opportunities suffered by the Local Union.

It should be noted that nowhere in Plaintiff's preliminary injunction application did Plaintiff demand a jury trial.  However, on February 1, 2005, Plaintiff moved for a jury trial.  Defendant filed no opposition to this motion.  On February 28, 2005, Magistrate Judge Falk granted Plaintiff's motion for a jury trial.

**B.**    *Kane II*

In February 2005, the Funds brought a separate action against Plaintiff, seeking additional payments allegedly owed by Kane to the Funds pursuant to the CBA.  Specifically, the Funds sought delinquent employer contributions for the work performed by Kane within the State of New Jersey for the time period of June 13, 2000 until April 20, 2005 - the time Kane provided notice of intent to terminate the agreement. (Giblin Cert., Ex. J.)

The Funds allege that Kane, as a signatory to a CBA with LIUNA, is obligated to make employer contributions to the Funds in required amounts for all covered work performed in New Jersey.  Covered work includes tenders, cleanup, scaffolds, masonry scaffolds, excavations and wrecking.  (Giblin Cert., Ex. A, ¶2.10.)  Additionally, the CBA provides that contributions must be made for all covered work performed within the territorial limits of the State of New Jersey.  (Giblin Cert., Ex. A, ¶2.30.)  The CBA permits Kane to accomplish covered work through the use of

subcontractors - rather than Kane's own direct employees; however, Kane is responsible for paying contributions to the Fund on behalf of these subcontractors. (Giblin Cert., Ex. A, ¶5.10.) Finally, the CBA requires Kane to ensure that all subcontractors become signatories to an agreement with LIUNA and Kane is responsible for any damages stemming from a failure to do so. (Giblin Cert., Ex. A, ¶16.10.)

The Funds allege that Kane did not fulfill these obligations. Specifically, in a Verified Complaint, Kane admitted that "[b]etween June 2000 and May 2004, Kane Builders completed approximately 100 [] projects and never employed members of the Union for any of those projects." (Giblin Cert., Ex. B, ¶30.) Additionally, through deposition testimony, Kane admitted that the work performed was "covered work" pursuant to the CBA. (Giblin Cert., Ex. C, 41:17-42:3; 14:13-14:16.) According to the Funds' submissions, no contributions have been made by Kane or Kane's subcontractors. The Funds engaged auditors to review the documents provided by Kane during discovery. The Funds' auditors concluded that Kane is liable to the Funds in the amount of $2,071,366.43 for unpaid contributions. (Giblin Cert., Ex. D.)

Kane claims that, contrary to the Funds' allegations, it was never contacted by LIUNA or by the Funds from June 2000 to May 2004. During this time, Kane claims that LIUNA never sought to enforce the terms of the CBA with respect to any of the projects Kane undertook in New Jersey. On this basis, Kane argues that the Funds failed to perform the following obligations imposed by ERISA: (1) the Funds failed to identify all plan participants who were employees of Kane Builders, Inc. or any of its subcontractors; (2) the Funds failed to provide a plan funding notice to Kane Builders, Inc. and to participating employees of Kane Builders, Inc. and its subcontractors; (3) the

Funds failed to determine who is in the plan and failed to notify relevant pensioners of Kane's and/or its subcontractors of their alleged failure to contribute to the plan; (4) there is no evidence that Kane's employees or any employee of any of its subcontractors has a current claim against the Funds for benefits accrued between June 2000 and May 2004; and (5) the Funds failed to inform Kane or any of its subcontractors of any obligation to contribute to the Funds until after the termination of the CBA.  Kane further argues that the Funds' failure to satisfy these ERISA-imposed obligations precludes the Funds' recovery from Kane.

## II.    CONFIRMATION OF ARBITRATION AWARD

Initially, on January 10, 2007, Plaintiff moved to stay the impending arbitration and for a date certain trial.  This Court denied Plaintiff's motion and directed Plaintiff to submit to arbitration. After Plaintiff withdrew its appeal, arbitration went forth on January 12, 2007.  Accordingly, Plaintiff's motion to stay the impending arbitration is now moot.  See N.C. v. Rice, 404 U.S. 244, 246 (1971).

Defendant moves to confirm Arbitrator Murray's opinion and award, entering judgments subject to audits, inclusive of attorneys fees and arbitration fees.  In response, Plaintiff contends that this Court should not confirm the arbitrator's opinion and award because the arbitrator had no authority to act.   Despite the fact that this Court specifically (1) found that Plaintiff is a signatory to the CBA; and (2) ordered Plaintiff to submit to arbitration, Plaintiff persists in re-arguing that there is still a question as to whether or not Plaintiff is bound by the CBA.  This argument is meritless because this Court has already denied Plaintiff's request for a stay of the arbitration and has compelled Plaintiff to arbitrate.  Thus, the arbitrator had authority to resolve the dispute before

him and enter an opinion and award.

Moreover, Plaintiff cannot avoid arbitration by later moving for a jury trial.  As set forth above, Plaintiff demanded a jury trial *after* this Court denied Plaintiff's request for a preliminary injunction and ordered Plaintiff to submit to arbitration.  Section 4 of the Federal Arbitration Act ("FAA") vests this Court with the power to make its own factual findings where the party in default has not demanded a jury.

> If the making of the arbitration agreement or failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may [] on or before the return date of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4; see also Hamilton Ins. Co. of N.Y. v. Republic Nat'l Life Ins. Co., 408 F.2d 606, 609 (2d Cir. 1969) ("there is not right to a jury trial . . . since [defendant] did not make a request for a jury trial as required by statute, 9 U.S.C. §4, on or before the return date of the notice of application).  Thus, in this case, Plaintiff - the "party in default" - did not make a timely demand for a jury.  This Court was entitled to decide the factual issues regarding the execution and formation of the CBA without a jury.  On this basis, the Court's order that the parties proceed to arbitration was binding and the arbitrator had the authority to enter an opinion and order after reviewing the evidence submitted.

This Court is required to engage in a limited review of Arbitrator Murray's opinion and award.  "It is [] not the role of a court to correct factual or legal errors made by an arbitrator."  Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 240 (3d Cir. 2005) (citing

Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir.

2004)).  As emphasized by Defendant, federal law elevates labor arbitration to "an exalted status."

Ludwig Mfg. Co. v. Fletcher, 405 F.2d 1123, 1126 (3d Cir. 1969).  "This rule of deference derives

from the Court's recognition that the parties to the collective bargaining agreement bargained for a

procedure in which an arbitrator would interpret the agreement."  Nat'l Ass'n of Letter Carriers v.

U.S. Postal Serv., 272 F.3d 182, 185 (3d Cir. 2001) (citing E. Assoc. Coal Corp. v. United Mine

Workers, 531 U.S. 57, 62 (2000)).

    The Court's primary inquiry when reviewing an arbitrator's opinion and award must be

whether the award draws its essence from the CBA.  See United Steelworkers of Am. v. Enter.

Wheel & Car Corp. No. 538, 363 U.S. 593, 597 (1960); United Parcel Servs., Inc. v. Int'l Bhd. of

Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 430, 55 F.3d 138, 141 (3d

Cir. 1995).  As explained by the Third Circuit, "[o]nce a court is satisfied that an arbitrator's award

draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the

award further."  Brentwood Med. Assocs., 396 F.3d at 240.  An award draws its essence from the

CBA if "the interpretation can in any rational way be derived from the agreement, viewed in the light

of its language, its context, and any other indicia of the parties' intention."  Ludwig Honald Mfg Co.

v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).

    Here, Arbitrator Murray acted within his authority because the CBA specifically provides for

an Arbitrator to resolve disputes involving the application of the CBA such as the one at issue here.

Arbitrator Murray considered the evidence presented and properly found Plaintiff in violation of the

CBA.  Accordingly, this Court is satisfied that Arbitrator Murray's award drew its essence from the

parties' CBA. Thus, Defendant's motion to confirm the opinion and award of Arbitrator Murray should be granted.

### III.    MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES

As set forth above, the Funds initiated Kane II pursuant to ERISA, based on Kane's failure to (1) apply the terms of the collective bargaining agreement to different work projects in New Jersey for the time period of June 13, 2000 to April 30, 2005; and (2) to make required contributions to the Funds in that regard. The Funds seek partial summary judgment on the issue of damages due to Kane's inability to come forward with proof concerning the number of hours that were worked in violation of the CBA. Specifically, the Funds rely heavily on ERISA's record-keeping provision - 29 U.S.C. § 1145.

### A.    Standard of Review

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a]

memorandum and pleadings are insufficient to repel summary judgment." <u>Schoch v. First Fid.</u> <u>Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990).  However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." <u>Newsome v. Admin. Office of the Courts of the State of N.J.</u>, 103 F. Supp.2d 807, 815 (D.N.J. 2000) <u>aff'd</u>, 51 Fed. Appx. 76 (3d Cir. 2002) (citing <u>Watts v. Univ. of</u> <u>Del.</u>, 622 F.2d 47, 50 (D.N.J. 1980)).

### B.    Qualifications of Funds' Expert

As an initial matter, this Court must determine whether the Funds' expert, Stephen Bowen, is qualified to submit a damages report and offer testimony pursuant to the Federal Rules of Evidence.  The success of the Funds' partial motion for summary judgment is wholly dependent upon the admissibility of Bowen's report and testimony.  The Funds' only evidence of their damages is set forth in Bowen's expert report.  Kane has separately filed a motion to strike Bowen's expert report and preclude his testimony pursuant to Federal Rule of Evidence 104(a) and for a <u>Daubert</u> hearing on Bowen's qualifications.  Specifically, Kane attacks (1) Bowen's qualifications to offer "expert" opinion; (2) the reliability of Bowen's methodology; and (3) the "assumptions" contained in Bowen's report regarding wage rates and labor costs.

Federal Rule of Evidence 702 provides

if scientific technical or other specialized knowledge will assist the trier of fact to understand or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 has been interpreted by the Third Circuit to include three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. U.S. v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995); In re Paoli R.R. Yard PCB Litig., 35 F.3d at 741-42 (3d Cir. 1994).

            1.     Qualifications

First, this Court must determine whether the Funds' expert has adequate "specialized knowledge" such that he is qualified to testify as an expert. The basis of "specialized knowledge" can be "practical experience as well as academic training and credentials." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (quoting Am. Tech. Resources v. U.S., 893 F.2d 651, 656 (3d Cir. 1990); Hammond v. Int'l Harvester Co., 691 F.2d 646, 653 (3d Cir. 1982)). The Third Circuit has interpreted the "specialized knowledge" requirement liberally, finding that "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." In re Paoli, 35 F.3d at 741.

Here, Bowen's certification sets forth the basis for his specialized knowledge, including *inter alia*, his educational and professional qualifications. (Certification of Steven Bowen ("Bowen Cert.") ¶¶1-12.) Bowen is employed by Schultheis & Panettieri, LLP, Certified Public Accountants as a Payroll Audit Manager. In his eleven years as a payroll auditor he has specialized knowledge regarding the payroll of employers such as Kane Builders. In fact, Bowen's client base is primarily in the construction industry - consisting of local branches of international unions. (Bowen Cert. ¶6.) Moreover, Bowen has specialized knowledge regarding employers' weekly and monthly contributions to welfare, pension and annuity funds as well as the interest and late penalties

-11-

associated with such contributions.  (Bowen Cert. ¶9.)  Accordingly, this Court is satisfied that Bowen has sufficient "specialized knowledge" to testify as an expert regarding the payroll and benefits owed by Kane.

        2.    <u>Reliability</u>

      Next, this Court must assess whether the process or technique used by Bowen is reliable.  <u>See In re Paoli</u>, 35 F.3d at 742 (citing <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993)). As set forth in <u>Daubert</u>, this Court should consider several factors in evaluating whether a particular methodology is reliable: (1) the testability of the expert's hypothesis; (2) whether the methodology has been subjected to peer review and publication; (3) the frequency by which the methodology leads to erroneous results; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the methodology has been generally accepted in the scientific community. <u>Id.</u> (citing <u>Daubert</u>, 509 U.S. at 593-94).

        In this case, Bowen sets forth his methodology for calculating the contributions owed by Kane.  Bowen specifically refers to the terms of the CBA between the parties which sets forth the basis for establishing loss.  Additionally, Bowen sets forth the procedures he followed in ascertaining the loss incurred by the Funds, including *inter alia* review of payroll records, job contracts, job billing history reports and contracts with and invoices from subcontractors.  This Court finds no reason to conclude that Bowen's methodology is unreliable.  Kane argues that Bowen's report is unreliable because he made assumptions regarding wage rates and "actual labor charges."  However, contrary to Kane's argument, Bowen explained these "assumptions," including the standard auditing procedures and the manner in which he applied them in the instant case.  Regarding the <u>Daubert</u>

-12-

considerations, this Court is satisfied that Bowen's methodology is testable, carries a low frequency of errors and is sufficiently standardized to avoid a high frequency of errors. Kane has not set forth a single reason for this Court to conclude that Bowen's auditing procedures are not generally accepted in the auditing community. Thus, Bowen's methodology is sufficiently reliable.

### 3.    Assist the Trier of Fact

Finally, this Court must conclude whether Bowen's testimony and report would assist the trier of fact. This third admissibility requirement is clearly met in this case. In calculating the contributions owed by Kane, the assistance of an auditor is not only helpful but essential. Accordingly, the third Rule 702 requirement is satisfied here.

### C.    ERISA's Record Keeping Requirement

Pursuant to 29 U.S.C. § 1145,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Further, ERISA provides for judicial enforcement of the plan's terms as third-party beneficiaries of the CBAs pursuant to 29 U.S.C. § 1132. As explained by the Third Circuit, Section 1145 was designed to defray "the cost to plans of employer deficiency" that "detract[ed] from the ability of plans to formulate or meet funding standards and adversely affect[ed] the financial health of plans' and because '[r]ecourse available under current law for collecting delinquent contributions [was] insufficient and unnecessarily cumbersome and costly." Agathos v. Starlite, 977 F.2d 1500, 1505 (3d Cir. 1992) (citing 126 Cong. Rec. 23039 (1980) (remarks of Rep. Thompson)).

In cases where an employer has not produced records regarding the work performed and the

employer's contributions, some courts have adopted a burden-shifting approach.  Specifically, both the Sixth and Ninth Circuits have adopted the approach set forth by the Eleventh Circuit in <u>Combs v. King</u>, 764 F.2d 818 (11th Cir. 1985).  <u>See</u> <u>Trustees of Painters Union Deposit Fund v. Ybarra Constr. Co.</u>, 113 Fed. App 664 (6th Cir. 2004); <u>Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.</u>, 839 F.2d 1333 (9th Cir. 1988).  In <u>Combs</u>, the Eleventh Circuit found that where sufficient evidence is set forth concerning the amount and extent of work performed, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." 764 F.2d at 826.  The rationale supporting this approach is that practically, the employer "is the party in a position to know and to produce the most probative facts concerning the nature and amount of work performed." <u>Trustees of the Mich. Laborers' Dist. Council Pension Fund  v. Van Sullen Constr., Inc.</u>, 825 F. Supp. 165, 169 (E.D. Mich. 1993).  Finally, regarding fairness, the Sixth Circuit noted that "an employer should not be allowed to benefit from the violation of its statutory record-keeping duty." <u>Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.</u>, 30 F.3d 692 (6th Cir. 1994).  Nevertheless, some courts have held that the burden-shifting analysis promulgated by <u>Combs</u> and its progeny is best left for trial and that "an employer's failure to maintain adequate records compels summary judgment *against* it." <u>Ill. Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking ("Gilbert Trucking")</u>, 71 F.3d 1361, 1367 (7th Cir. 1995). <u>See also</u> <u>Mingoia v. Santa Fe Drywall Corp.</u>, No. 04-1712, 2005 WL 1384013 (S.D.N.Y. Jun. 9, 2005); <u>Demolition Workers Union v. Mackryce Contracting Corp.</u>, No. 97-4094, 2000 WL 297244

-14-

(S.D.N.Y. Mar. 22, 2000).[1]   However, even in cases where the courts have found that the burden-shifting analysis is best left for trial, the employer produced *some* evidence regarding the work done or contributions made - either in the form of an affidavit or deposition testimony.  As those cases explained, the proper issue on summary judgment is whether the employer has submitted evidence that raises a factual question regarding the damages owed.  See id. at *7; Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Employers v. Murphy's Tire, Inc. ("Murphy's Tire"), No. 97-814, 1998 WL 865594, at *8 (N.D.N.Y. Dec. 9, 1998).

In this case, the Funds have demonstrated that covered work was performed by Kane in New Jersey during the period of time that Kane was a signatory to a CBA with LIUNA.  Thus, the Funds satisfy their initial burden of showing the extent of work performed and, under the Combs burden-shifting analysis, the burden of proof shifts to Kane.  However, Kane has produced no evidence to raise a question of fact regarding the work performed on covered projects or who performed it.  Moreover, Kane does not produce any evidence to rebut the Funds' auditor's testimony and report.  See Gilbert Trucking, 71 F.3d at 1367 (denying summary judgment where employer's affidavit and deposition testimony cast doubt on the accuracy of the fund's calculations); Murphy's Tire,, 1998 WL 865594 at *9 (denying summary judgment where employer produced evidence putting the fund's

---

[1]Neither the Third Circuit nor the District of New Jersey has specifically addressed whether the Combs burden-shifting approach should be utilized where an employer fails to maintain or produce adequate records.  Thus, this Court must look to the case law of other jurisdictions.  However, it should be noted that the Eastern District of Pennsylvania has favorably cited to the Combs line of decisions.  See Int'l Bhd. of Elec. Workers Local Union No. 380 v. State Elec., No. 04-2610, 2006 WL 2228863 (E.D. Pa. Aug. 3, 2006); Composition Roofers Union Local 30 Welfare Trust Fund v. L.A. Kennedy, Inc., No. 93-1558, 1996 WL 220975 (E.D. Pa. May 2, 1996).

calculation in question).  On this basis, this Court is satisfied that summary judgment is appropriate

because Kane has failed to comply with its statutory duty of maintaining adequate records and has

set forth no proof that raises a question of material fact as to the accuracy of the Funds' calculations

regarding the contributions owed by Kane.

### D.    ERISA's Plan Funding Notice Requirements

Rather than argue that this Court should not employ the burden-shifting analysis, Kane

contends that it is exempt from its obligation to contribute to the Funds because the Funds have not

satisfied the plan funding notice requirements imposed by ERISA.  ERISA imposes certain fiduciary

obligations upon plan participants.  The Third Circuit has recognized a number of fiduciary

obligations imposed on multiemployer funds: (1) "a duty of determining who is in fact a plan

participant;" (2) a duty to "provide all participating employees with certain materials describing the

employees' rights and obligations under the plan;" and (3) the duty to "notify the pensioner of his

employer's failure to contribute to the fund as required by the pension agreement." Agathos, 977

F.2d at 1507 (citations omitted).  Particularly relevant to Kane's defense, ERISA Sections 1021,

1022 and 1024(b) impose notice requirements on multiemployer funds.  In this case, Kane argues

that the Funds do not have the right to collect contributions from Kane because it has not satisfied

the ERISA-imposed notice requirements.  Specifically, Kane argues that the Funds did not provide

plan funding notices to, *inter alia*, Kane, employees of Kane and Kane's subcontractors and their

employees.   Kane  argues  that  these  failures  to  provide  notice  violate  29  U.S.C.  §  1021(f).

Additionally, Kane argues that the Funds failed to determine who is in the plan and failed to notify

pensioners of Kane's failure to contribute to the plan, in violation of 29 U.S.C. §§ 1021, 1022 and

1024.  Based on these arguments, Kane attempts to raise a question of material fact: did the Funds satisfy the fiduciary obligations imposed by ERISA?

Kane relies heavily on <u>Agathos v. Starlite</u>, wherein the Third Circuit considered the relationship between a multiemployer fund's fiduciary obligations and an employer's general obligation to make contributions on behalf of employees covered by a facially valid CBA.  977 F.2d 1500.  <u>Agathos</u> provides that "[a]s a general rule, an employer is liable for fund contributions on behalf of all employees covered by a facially valid CBA," however, in the instance where a multiemployer fund does not satisfy its fiduciary obligations pursuant to ERISA, the employer may not be required to make contributions to the multiemployer fund.  <u>Id.</u> at 1506-07.  The Third Circuit concluded that the employer in <u>Agathos</u> was not unconditionally required to make fund contributions where the "Funds persistently violated their 'watchdog' duties under ERISA to identify the employees and inform them of their participation in the plans."  <u>Id.</u> at 1507.  Specifically, the Third Circuit was concerned that there was no way of discerning which employees had valid claims for benefits against the employer.  Thus, the Circuit Court ruled that an evidentiary hearing was necessary to determine the number of unreported employees and to prevent a "windfall" for the multiemployer fund.  <u>Id.</u> at 1507.  Additionally, the Third Circuit set forth the employer's burden of proof at such a hearing:

> Since an employer ordinarily would be required to make contributions pursuant to a facially valid agreement covering all employees, [the Employer] will bear the burden of proof on the issue.  As to each unreported employee, [the Employer] may avoid contributions only by establishing that the employee no longer has a colorable claim for benefits.

<u>Id.</u> at 1508-09.

-17-

In response, the Funds do not address whether or not they satisfied their fiduciary obligations. Instead, the Funds argue for application of the general rule that an employer is always liable for fund contributions on behalf of employees covered by a valid CBA. In this case, Kane seeks to avoid its obligation to contribute to the Funds by arguing that the Funds breached their fiduciary duties to provide notice to employers and pensioners. However, no evidence has been set forth to support this argument. Additionally, in order for Kane to ultimately prevail on this argument, it will bear the burden of proving that there are no employees with a colorable claim for benefits. Id. Discovery is closed in this case and Kane has not offered any evidence to show that (1) it should not be liable for its contributions to the Funds; or (2) the unreported employees no longer have colorable claims for benefits. Accordingly, summary judgment is appropriate on the issue of damages because Kane has failed to raise any material questions of fact.

## IV.  CONCLUSION

For the reasons stated, it is the finding of this Court that _Kane Builders' motion to vacate the arbitration opinion and award is **denied**; Plaintiff's motion to preclude expert report and testimony is **denied**; Defendant's motion to confirm the arbitration award is **granted** and Defendant's motion for partial summary judgment is **granted**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          August,  21   2007
Orig.:         Clerk
cc:            Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File

-18-